**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

**FILED**

**June 3, 2021**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

*In re* **Z.M.**

**No. 20-0916** (Raleigh County 19-JA-131-P)

## MEMORANDUM DECISION

Petitioner Mother M.R., by counsel Robert P. Dunlap II, appeals the Circuit Court of Raleigh County's October 6, 2020, order terminating her parental rights to Z.M.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel James Wegman, filed a response in support of the circuit court's order. The guardian ad litem, Vickie L. Hylton, filed a response on behalf of the child in support of the circuit court's order. Petitioner filed a reply. On appeal, petitioner argues that the circuit court erred in denying her an extension of her improvement period and terminating her parental rights.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In February of 2018, the DHHR filed a petition that alleged, in relevant part, that petitioner abused and neglected an older child who is not at issue in this appeal. According to the DHHR, petitioner admitted to abusing marijuana and taking Subutex while pregnant with this older child. Additionally, the DHHR alleged that petitioner tested positive for THC and buprenorphine upon admission to the hospital to give birth to this child, that the child's cord tested positive for buprenorphine and norbuprenorphine, and that the child was transferred to a neonatal intensive care unit in order to monitor the child for effects from drug exposure. The DHHR also alleged that petitioner was caught smoking in her room while in the hospital, prompting a security search that recovered a "pill cutter, syringes, [a] spoon with white residue, Suboxone strips, Subutex pills[,]

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

1

and other unidentified loose pills." It is unnecessary to address the full procedural history of this first petition, given that petitioner did not appeal any order that made rulings about this child. It is sufficient to note, however, that petitioner was eventually adjudicated as an abusing parent upon these allegations and her rights to this older child were terminated.

On June 3, 2019, the DHHR filed an amended petition[2] against petitioner alleging that she recently gave birth to the subject child Z.M. According to the DHHR, petitioner covertly gave birth to Z.M. in Winston-Salem, North Carolina, and lied to hospital staff about her physical address. A social worker in that state contacted Child Protective Services ("CPS") because "they suspected that [petitioner] was running from CPS in West Virginia." The petition also alleged that the same month petitioner gave birth to Z.M. she tested positive for THC and Suboxone. Based on petitioner's ongoing substance abuse while pregnant and her efforts to thwart Z.M.'s removal, the DHHR alleged that petitioner abused and neglected the child.

In November of 2019, the circuit court terminated petitioner's parental rights to her older child upon evidence that she rejected the DHHR's case plan and announced her intention to voluntarily relinquish her parental rights to that child.[3] According to the court, this evidence established petitioner's continued refusal to address the issues of abuse and neglect in regard to that older child. Relevant to the issues in the instant appeal, the court also adjudicated petitioner as an abusing parent in regard to Z.M. at that time. The court based adjudication on petitioner's "continuing illicit substance abuse." The court further granted petitioner a post-adjudicatory improvement period. The following month, petitioner signed a case plan that required her to remain drug free, seek inpatient substance abuse treatment, and submit to regular drug screens.

According to a court summary filed in July of 2020, the DHHR continued to have concerns that petitioner was abusing Suboxone and/or Subutex, as petitioner refused to present a valid prescription for either drug. Similarly, a court summary filed in September of 2020 again indicated that petitioner failed to provide a valid prescription for Suboxone, despite the fact that she continued to test positive for the drug. According to the DHHR, instead of complying with requests to confirm her lawful prescription and use of the drug, petitioner "presented her Suboxone bottle with empty wrappers." The summary also indicated that although petitioner attended substance abuse treatment, "she told the staff that she was only doing this because CPS [was] making her and not because she needed to stop using any drugs." According to petitioner, she "gave the parties a list of her prescribed medications" at a multidisciplinary team meeting prior to the final hearing.

In September of 2020, the court held a final dispositional hearing, during which the DHHR presented evidence of petitioner's noncompliance with the case plan. A DHHR worker testified to petitioner's failure to submit to drug screens as ordered. A caseworker testified that petitioner stopped attending screens as ordered, although she had recently resumed the screens. According

---

[2]This was, technically, the second amended petition filed in the proceedings below. Petitioner did not, however, include either of the first two petitions in her appendix record on appeal to this Court.

[3]Petitioner did not appeal the order terminating her rights to this child.

to the record, petitioner disregarded the court's order about drug screens and chose to undergo screening with a provider of her own choosing and without court approval. The worker further confirmed that because petitioner refused to comply with the screening requirement, visits with the child were suspended. The director of the Raleigh County Day Report Center testified that petitioner missed approximately twenty-seven screens, and that, when she did screen, petitioner was positive for THC, Suboxone, and gabapentin. According to multiple witnesses, petitioner was absent from various services for months at a time. Multiple witnesses also testified that petitioner had, at best, one clean screen during the entire pendency of the proceedings.

Further, petitioner failed to submit to inpatient substance abuse treatment and, instead, began outpatient therapy. According to petitioner, no inpatient substance abuse treatment programs would accept her based on her circumstances. However, despite her participation in outpatient treatment, petitioner continued to test positive for THC. The record further established that shortly following her award of a post-adjudicatory improvement period, petitioner reported for a substance abuse assessment and tested positive for Suboxone and THC. Following the evaluation, petitioner was diagnosed with severe opioid use disorder and mild cannabis use disorder. The DHHR provided evidence that, despite this diagnosis, petitioner "took little to no action to address her ongoing substance use and abuse" and failed to complete any of the programs required by her case plan. In fact, petitioner presented a witness who operated a counseling program that petitioner attended and who confirmed that petitioner failed to maintain sobriety. The circuit court also considered evidence that petitioner secured steady employment at three separate businesses but found that "such level of employment was an effort to create an excuse so as to avoid full compliance and participation in programs designed to assist and address the underlying issues in this matter."

Petitioner moved for an extension of her post-adjudicatory improvement period, but the circuit court found that the primary condition of abuse and neglect, substance abuse, had continued without correction. As the circuit court noted, petitioner abused marijuana during her pregnancy and continued to do so, as evidenced by a "multitude of positive screens." As such, the court denied the motion for an extension of the improvement period. Petitioner also moved to amend her case plan on the basis that it required her to attend inpatient substance abuse treatment, for which she allegedly did not qualify. The court found, however, that this Court has previously held that a parent may not wait until an improvement period has lapsed to raise objections to the plan. *See In re Jamie Nicole H.*, 205 W. Va. 176, 182, 517 S.E.2d 41, 47 (1999). According to the circuit court, petitioner waited until four months after the expiration of her improvement period to raise this objection. As such, the court denied this motion as well.

Turning to disposition, the court noted that across what amounted to two proceedings, petitioner continued to abuse THC for a period of two years. Despite the DHHR offering extensive resources, petitioner "continued to disregard the most basic [o]rder of the [c]ourt and requirements" under the case plan. The court noted petitioner's compliance in regard to employment and housing but indicated that these "were not the most concerning" issues of abuse and neglect that required correction. Based on petitioner's continued substance abuse, the court found that the DHHR established that there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect in the near future and that termination of

3

her parental rights was in the child's best interest. As such, the court terminated petitioner's parental rights.[4] It is from the dispositional order that petitioner appeals.

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that it was error to deny her request for an extension of her improvement period. According to petitioner, she made substantial progress in her improvement period by obtaining employment and housing. She further argues that she testified that she requested an extension of her improvement period so that she could cease abusing THC and that experts testified in support of her motion that she could achieve this goal. We find, however, that the circuit court did not err in denying petitioner's motion.

According to West Virginia Code § 49-4-610(6)

> [a] court may extend any improvement period granted pursuant to subdivision (2) [governing post-adjudicatory improvement periods] . . . for a period not to exceed three months when the court finds that the respondent has substantially complied with the terms of the improvement period; that the continuation of the improvement period will not substantially impair the ability of the department to permanently place the child; and that the extension is otherwise consistent with the best interest of the child.

Contrary to her argument on appeal, the record does not support petitioner's assertion that she substantially complied with the terms of her improvement period. In fact, the circuit court noted petitioner's success in obtaining housing and employment, two factors upon which she relies to argue on appeal that she substantially complied. However, the court noted that petitioner failed to make any improvement in regard to the most important aspect of her improvement period—her substance abuse. We agree. According to the record, petitioner's substance abuse continued,

---

[4]The unknown father's parental rights remain intact. According to respondents, the permanency plan for the child is adoption in the current foster home.

unabated, across two pregnancies, termination of her parental rights to two children, and two years of proceedings below. While petitioner argues that her final drug screen was negative for THC, we find that this was insufficient to establish her substantial compliance with this most important aspect of this case. Further, while petitioner argues that she tested positive for THC because of her consumption of cartridges purchased legally in West Virginia, the circuit court specifically found that argument was "unfounded, and wholly unsupported by any evidence." As we have explained, a circuit court has discretion to deny an improvement period when no improvement is likely. *See In re Tonjia M.*, 212 W. Va. 443, 448, 573 S.E.2d 354, 359 (2002). As the circuit court found, petitioner clearly evidenced her refusal to comply with basic requirements below by failing to follow clear directions, such as complying with drug screens as ordered. Therefore, it is clear that the circuit court did not err in denying petitioner's motion for an extension of her post-adjudicatory improvement period.

This same evidence also supports the circuit court's termination of petitioner's parental rights. Again, petitioner makes much of her participation in certain services and her employment and housing to support her argument, while ignoring the fact that her substance abuse continued throughout the proceedings. While petitioner again argues that her negative screen for THC shortly before the dispositional hearing evidenced her ability to correct the conditions of abuse and neglect, we reiterate that this isolated screen, when compared against petitioner's repeated refusal to cease abusing THC through the lengthy duration of the proceedings, does not support petitioner's position. Instead, it evidences the fact that petitioner failed to take any steps to comply with the court's direction that she cease abusing drugs until the last possible opportunity. In short, petitioner ignores the fact that

> [a]lthough it is sometimes a difficult task, the trial court must accept the fact that the statutory limits on improvement periods (as well as our case law limiting the right to improvement periods) dictate that there comes a time for decision, because a child deserves resolution and permanency in his or her life, and because part of that permanency must include at minimum a right to rely on his or her caretakers to be there to provide the basic nurturance of life.

*State ex rel. Amy M. v. Kaufman*, 196 W. Va. 251, 260, 470 S.E.2d 205, 214 (1996). Despite the fact that petitioner was given over two years, between the multiple proceedings, to remedy the same conditions of abuse and neglect, she failed to do so. That she was able to produce one negative screen shortly before the dispositional hearing when the record shows that she was able to produce, at most, one clean screen throughout the entire pendency of the proceedings is simply insufficient to support her position that termination was in error.

On the contrary, the Court has explicitly explained that under West Virginia Code § 49-4-604(c)(6), a circuit court may terminate parental rights upon finding that there is no reasonable likelihood that the conditions of abuse and neglect can be substantially corrected and that termination of parental rights is necessary for the child's welfare. The circuit court here made both findings upon substantial evidence. According to West Virginia Code § 49-4-604(d)(1), a situation in which there is no reasonable likelihood that the conditions of abuse and neglect can be substantially corrected includes one in which the parent has

habitually abused or [is] addicted to alcohol, controlled substances or drugs, to the extent that proper parenting skills have been seriously impaired and the person . . . [has] not responded to or followed through the recommended and appropriate treatment which could have improved the capacity for adequate parental functioning.

As the circuit court found, petitioner's continued drug abuse, including while pregnant with Z.M., resulted in her inability to properly parent the child and required the termination of her parental rights. Further, as this Court has held,

"[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). Based on the overwhelming evidence in support of these determinations, we find no error in the circuit court's termination of petitioner's parental rights.

In support of her argument, petitioner also argues that the DHHR failed to make reasonable efforts to promote reunification with the child, citing to evidence that a specific DHHR worker had not spoken with petitioner in the four months prior to disposition, failed to visit petitioner's home during the case, and called petitioner a "psycho" in an email. This argument, however, is entirely unavailing, given that the record shows that the DHHR made extensive efforts to assist petitioner in her efforts to regain custody of her child. Contrary to her argument, it was petitioner who failed to make reasonable efforts during the proceedings, as she went long periods where she failed to comply with services and completely disregarded other basic court orders.

Petitioner also argues that this same DHHR worker testified that petitioner's rights should have been terminated because she "fail[ed] to get off of Suboxone." According to petitioner, this violates West Virginia Code § 49-4-604(f), which states that

[t]he court may not terminate the parental rights of a parent on the sole basis that the parent is participating in a medication-assisted treatment program, as regulated in § 16-5Y-1 et seq., for substance use disorder, as long as the parent is successfully fulfilling his or her treatment obligations in the medication-assisted treatment program.

This argument is unavailing for several reasons, most importantly because it totally misrepresents the record below. While it is true that the DHHR worker testified that the DHHR sought termination because of petitioner's continued use of Suboxone, she ignores the fact that the DHHR filed a court summary the day prior to the dispositional hearing that addressed petitioner's continued refusal to provide proof that she was lawfully prescribed Suboxone. Throughout the

proceedings, the DHHR was confronted with concerns that petitioner was either abusing the drug without a prescription or in a manner that was inconsistent with a prescription. Because of petitioner's continued failure to present documentation to allay these fears, the DHHR did recommend that petitioner cease using Suboxone and, instead, attend inpatient substance abuse in an effort to become drug free. We recently explained that

> [t]he use of medication-assisted treatment is authorized by the Medication-Assisted Treatment Program Licensing Act, West Virginia Code §§ 16-5Y-1 to 16-5Y-13 (2016), and the Act's supporting regulations. Medication-assisted treatment will not be appropriate or beneficial for all persons suffering from opioid use disorder. However, when medication-assisted treatment is appropriate and potentially beneficial, any bias against its use is contrary to the public policy of this State as announced by the Legislature.

Syl. Pt. 5, *In re M.M.*, --W. Va.--, 853 S.E.2d 556 (2020). Based on the record, we do not find any bias against medication-assisted treatment by the DHHR below. Instead, the DHHR simply sought to ensure that petitioner was lawfully and appropriately participating in such a program and, when petitioner failed to produce documentation to establish that this was the case, recommended she cease using Suboxone in favor of attending inpatient substance abuse treatment. Even more importantly, however, is the fact that the circuit court did not rely on petitioner's continued use of Suboxone in terminating her parental rights. Upon hearing evidence of petitioner's lawful Suboxone use at the final dispositional hearing, the circuit court proceeded to terminate petitioner's parental rights upon her continued abuse of THC alone. As such, petitioner cannot establish any error in regard to the termination of her parental rights in regard to her use of Suboxone.

Lastly, this Court reminds the circuit court of its duty to establish permanency for the child in this case. According to the DHHR, the permanency plan for the child is adoption in the current foster home, but the DHHR provides no information on how that permanency will be timely achieved while the unknown father's rights remain intact. Rule 39(b) of the Rules of Procedure for Child Abuse and Neglect Proceedings requires that

> [a]t least once every three months until permanent placement is achieved as defined in Rule 6, the court shall conduct a permanent placement review conference, requiring the multidisciplinary treatment team to attend and report as to progress and development in the case, for the purpose of reviewing the progress in the permanent placement of the child.

Further, this Court reminds the circuit court of its duty pursuant to Rule 43 of the Rules of Procedure for Child Abuse and Neglect Proceedings to find permanent placement for the children within twelve months of the date of the disposition order. As this Court has stated,

> [t]he [twelve]-month period provided in Rule 43 of the West Virginia Rules of Procedure[] for Child Abuse and Neglect Proceedings for permanent placement of an abused and neglected child following the final dispositional order must be strictly followed except in the most extraordinary circumstances which are fully substantiated in the record.

*Cecil T.*, 228 W. Va. at 91, 717 S.E.2d at 875, syl. pt. 6. Moreover, this Court has stated that

> [i]n determining the appropriate permanent out-of-home placement of a child under [West Virginia Code § 49-4-604(c)(6)], the circuit court shall give priority to securing a suitable adoptive home for the child and shall consider other placement alternatives, including permanent foster care, only where the court finds that adoption would not provide custody, care, commitment, nurturing and discipline consistent with the child's best interests or where a suitable adoptive home [cannot] be found.

Syl. Pt. 3, *State v. Michael M.*, 202 W. Va. 350, 504 S.E.2d 177 (1998). Finally, "[t]he guardian ad litem's role in abuse and neglect proceedings does not actually cease until such time as the child is placed in a permanent home." Syl. Pt. 5, *James M. v. Maynard*, 185 W. Va. 648, 408 S.E.2d 400 (1991).

For the foregoing reasons, we find no error in the decision of the circuit court, and its October 6, 2020, order is hereby affirmed.

Affirmed.

**ISSUED**: June 3, 2021

**CONCURRED IN BY**:

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton