517 S.E.2d 41

In the Interest of JAMIE NICOLE H. and Thomas Alvin H.

No. 25800.

Supreme Court of Appeals of West Virginia.

Submitted May 4, 1999.

Decided June 17, 1999.

G. Ernest Skaggs, Esq., Skaggs & Skaggs, Fayetteville, West Virginia, Attorney for Dorothy H.

Kevin Duffy, Esq., Clay, West Virginia, Attorney for Stanley L.K.

Barbara L. Baxter, Esq., Assistant Attorney General, Charleston, West Virginia, Attorney for Department of Health & Human Resources.

William C. Garrett, Esq., Gassaway, West Virginia, Guardian ad Litem.

WORKMAN, Justice:

Dorothy H.[1] appeals from the July 14, 1998, order of the Circuit Court of Braxton

---

1. Consistent with our practice in cases involving sensitive facts, we identify the parties by initial

County terminating her rights to her minor children, Jamie H., who is currently eleven years old, and Thomas H., who is currently ten years old. Appellant asserts error with regard to the trial court's refusal to grant an extension of the ninety-day post-adjudicatory improvement period. In addition, Appellant maintains that the trial court, in refusing to extend the post-adjudicatory improvement period, wrongly relied on her failure to comply with certain improvement period objectives which had no bearing on her parental fitness. After carefully reviewing Appellant's assertions of error against the record in this matter, we conclude that the lower court did not error in terminating Appellant's parental rights or in denying an additional improvement period.

The most recent charges of neglect[2] were instituted on December 19, 1997, when the Department of Health and Human Resources ("DHHR") filed a petition pursuant to West Virginia Code § 49–6–1 (1998), charging Appellant with "refusal, failure and inability to supply the infant children with necessary food, clothing, shelter, supervision, medical care and education."[3] On this same date, the trial court entered an order temporarily transferring custody to DHHR. On December 29, 1997, Appellant waived the preliminary hearing and moved for a sixty-day improvement period, which the trial court granted.

At the adjudicatory hearing, held on February 2, 1998, Appellant admitted to multiple instances of neglect that were alleged in the petition.[4] The trial court concluded that Jamie and Thomas H. were neglected, but recognized that there were no allegations of physical abuse. Appellant moved for a ninety-day improvement period to run from the December 29, 1997, hearing. While the lower court denied this request, it did grant a ninety-day improvement period which commenced on February 2, 1998. During the improvement period, Appellant was to achieve the following goals:

(1) To maintain housing for the children;

(2) To undergo a psychological evaluation and obtain counseling;

(3) To work toward her GED;

(4) To obtain employment;

(5) To maintain an alcohol-free environment for the children without negative social behaviors.

During the post-adjudicatory improvement period, Appellant was incarcerated on two separate occasions. First, she was incarcerated from April 11, 1998, until April 23, 1998, for petit larceny. Within less than a full week of her release from jail, Appellant was arrested for battery and revocation of probation and then incarcerated on those charges from April 29, 1998, until May 15, 1998. At the dispositional hearing held on June 22, 1998,[5] Appellant's parental rights were terminated.[6] Appellant moved for a sixty-day ex-

only. *See In re Jeffrey R.L.*, 190 W.Va. 24, 26, 435 S.E.2d 162, 164 n. 1 (1993).

2. Jamie H. and Thomas H. had previously been removed from Appellant's custody and placed in foster care from August 28, 1990, to April 24, 1995.

3. This petition resulted from an investigation by DHHR case worker, Patty Salisbury, in response to a complaint made by Appellant's brother and sister-in-law that Appellant had sold all of her furniture, was purportedly dying of cancer (or so she claimed), and attempting to get various local businesses to collect money for her benefit. Another averment set forth in the petition concerned Appellant's failure to return home after asking a teenager to watch her children for a few hours on December 16, 1997. While the record is unclear as to how much time passed before Appellant did return, the fact that Appellant's family members took her children to DHHR suggests that more than a nominal period of time

was involved. Additional grounds of neglect cited in the petition included the fact that neither Jamie H. or Thomas H. were attending school on a regular basis and Thomas H. was not being given his Ritalin.

4. She admitted that Jamie H. and Thomas H. had been absent from school on all the days specified in the petition; that she had left them in the care of a teenager on December 16, 1997, and not returned; that she had been caught driving on a suspended license; and that her children had previously been in foster care for a lengthy period of time.

5. This hearing had been scheduled for May 8, 1998, but had to be continued because of Appellant's incarceration.

6. The trial court concluded, *inter alia*, that while Appellant did not lack the ability to understand what was expected of her, she "suffers from a

tension of the post-adjudicatory improvement period based on a pattern of improvement and cooperation.[7] The trial court denied this motion, determining that it was too little, too late.[8] In her prayer for relief, Appellant seeks a remand of this matter to the circuit court.

## I. Standard of Review

 In syllabus point one of *In re Tiffany S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996), we set forth the standard of review for abuse and neglect cases:

> Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety.

196 W.Va. at 225–26, 470 S.E.2d at 179–80.

## II. Discussion

Appellant argues that the trial court erred in not granting her an extension of the post-adjudicatory improvement period. Related to this assignment is her contention that the trial court abused its discretion in imposing certain conditions with regard to the post-adjudicatory improvement period. Appellant argues that the trial court wrongly focused on her failure to diligently work toward the attainment of her GED and to find gainful employment. To rely on these conditions as a basis for denying her an additional improvement period was error, according to Appellant, since neither of these conditions impact on whether she is a good mother to her children.

 Pursuant to West Virginia Code § 49–6–12(g) (1998), a trial court may grant up to a three-month extension of the post-adjudicatory improvement period, provided certain statutory requirements are met. Before a circuit court can grant an extension of a post-adjudicatory improvement period, the court must first find "that the respondent has substantially complied with the terms of the improvement period; that the continuation of the improvement period would not substantially impair the ability of the department [DHHR] to permanently place the child; and that such extension is otherwise consistent with the best interest of the child." W. Va.Code § 49–6–12(g). This Court recognized in *In re Katie S.*, 198 W.Va. 79, 479 S.E.2d 589 (1996), that a circuit court's failure to extend an improvement period is not error where there is no "evidence showing a reasonable likelihood of improvement." *Id.* at 89, 479 S.E.2d at 599.

 The record in this case demonstrates conclusively that Appellant was given more than adequate time to demonstrate whether she could provide a basic level of care for her two minor children. While Appellant claims to have been "making substantial progress toward meeting the conditions of the im-

lack of desire to accept the responsibilities of rearing and caring for these children."

7. Following Appellant's release from jail on May 15, 1998, she attended counseling on May 19, May 26, June 1, and June 12. Appellant states that during the first six months of 1998, she attended a total of ten counseling sessions, four of which were after her release from jail. Beginning on June 2, 1998, Appellant began attending GED classes. By the time of the dispositional hearing, she had attended six such classes. As to the other conditions of her improvement period, Appellant had not secured employment, but she had completed the required psychological evaluation.

8. The circuit court stated: "But the Court is of the opinion and views this case in which at the eleventh hour [the Appellant] is going to do all of these things." And the court also commented that, Appellant had "been afforded an opportunity to get her act in order and she chose to ignore it."

provement period," the record in this case reveals otherwise. At the dispositional hearing held on June 22, 1998, Appellant admitted that she did not even begin to attempt to comply with the terms of her family case plan until late in April of 1998.[9] She further admitted that her efforts were prompted by the approaching date of the disposition hearing.

Appellant's efforts to comply with the family service plan amounted to her attendance at four counseling sessions following her release from jail on May 15, 1998.[10] In addition, Appellant attended six GED classes, with the first class beginning on June 2, 1998.[11] Appellant readily admits that she did not have employment or suitable housing[12] for her children by the date of the dispositional hearing. Moreover, as the trial court observed, Appellant spent a good part of her post-adjudicatory improvement period incarcerated.[13]

The circuit court reviewed Appellant's history[14] and her performance during the post-adjudicatory improvement period. The court observed the following:

> In this matter, Case 97–JA–5, is not the first occasion that the respondent mother had to come before the Court relative to the care that she was providing to her children.

> She was in the Court system as a result of a neglect petition previously filed in this case....

> As a result of that encounter, the Department offered a range of services that it's called upon to offer ... and worked with the respondent mother for a period of four years or thereabout.

....

> The Court find[s]—I don't believe it's a question of ability. I think it's a question of what ... [Appellant] desires to do with her time, and it appears to the Court that she desires to put what she wants to do ahead of her responsibility to the children.

> Her predicament probably wouldn't be as bad had she taken the step of securing support and maintenance for these children.

....

> The Court is of the opinion that Dorothy H[.] does not suffer from an inability to understand what is required of her as a mother.

> The Court concludes that Dorothy H[.] suffers from a lack of desire to accept the responsibilities for properly rearing and caring for these children.

....

> The Court is of the opinion that maybe she shouldn't have—maybe I shouldn't have returned the children to her when they were returned to her the first time, because it's the same pattern.

> These children are entitled to know that there is more to life than what they've been exposed to up to now...

....

> In this instance, this case is merely a continuation of what these children previously encountered, and the Court is of the opinion that the time for continued improvement periods and continued counseling and continued rendering of service by

9. The post-adjudicatory improvement period was slated to end on May 3, 1998.

10. These sessions took place on May 19, May 26, June 1, and June 12. Appellant represents in her brief that the counselor canceled sessions scheduled for June 2 and June 19.

11. We observe that Appellant's GED class attendance actually took place after the time period when the post-adjudicatory improvement period had technically expired on May 3, 1998. It was only because of Appellant's imprisonment that the dispositional hearing held on June 22, 1998, could not be held as originally scheduled on May 8, 1998.

12. At the time of the dispositional hearing, Appellant and her two children were residing with Appellant's mother and brother in a two-bedroom mobile home.

13. The guardian ad litem stated at the June 22, 1998, proceeding that Appellant had been incarcerated five times during the eighteen-month period that preceded the dispositional hearing.

14. The trial court commented that it "has had occasion to observe the respondent mother here in Court on many occasions[.]"

the Department of Health and Human Resources should be concluded.

Appellant faults the trial court for basing its decision not to extend her post-adjudicatory improvement period on two conditions that were made a part of her family case plan. The specific goals to which she now objects are the securement of employment and working towards the attainment of a GED. Pursuant to West Virginia Code § 49–6D–3 (1998), a family case plan must be developed by the DHHR and submitted to the circuit court. The conditions about which Appellant now complains were developed by the DHHR with her consent and input. Appellant signed the family case plan, thereby acknowledging what efforts were required on her part to remedy her parenting deficiencies. When the family case plan was introduced and made a part of the record of this case at the February 2, 1998, adjudicatory proceeding, Appellant made no objection to the plan.

Our statutes and rules of procedure both anticipate and provide for the modification of family case plans. West Virginia Code § 49–6D–3(b) states that "[t]he family case plan may be modified from time to time by the department to allow for flexibility in goal development, and in each such case the modifications shall be submitted to the court in writing." Rule 35(b)(2) of the West Virginia Rules of Procedure for Abuse and Neglect Proceedings expressly provides for modification of case plans where termination of parental rights is contested at a pre-dispositional hearing. That rule provides, in pertinent part:

> The guardian ad litem for the children, the other respondents and their counsel shall advise in the pre-dispositional hearing and, where termination is sought, after the court's findings on the factual issues surrounding termination are announced, whether any such persons seek a modification of the child's case plan as submitted or desire to offer a substitute child's case plan for consideration by the court. The court shall require any proposed modifications or substitute plans to be promptly laid before the court and take such action, including the receipt of evidence with respect there-

to, as the circumstances shall require. It shall be the duty of all the parties to the proceeding and their counsel to co-operate with the court in making this information available to the court as early as possible. . . .

W.Va.R.Pro.Abuse/Neglect 35(b)(2). These same rules provide that any party can seek a status conference "to advise the court of pertinent developments in the case or problems which arose during the formulation and implementation of a case plan." W.Va.R.Pro.Abuse/Neglect 47.

 While the procedural mechanisms for objecting to and modifying a family case plan are clearly in place, a parent cannot wait until the improvement period has lapsed to raise objections to the conditions imposed on him/her. The rules of procedure which govern abuse and neglect proceedings. clearly require that a party seeking to modify a family case plan must act with alacrity and inform the court as soon as possible of the need for modification. *See* W.Va.R.Pro. Child Abuse/Neglect 35(b)(2); *see also In re Carlita B.*, 185 W.Va. 613, 625–26, 408 S.E.2d 365, 377 n. 15 (1991) (stating that "[a]t the outset of an improvement period, the attorneys for the parents should apprise the court if their clients foresee any obstacles to compliance with the plan of improvement, and the court should make any directives as necessary to obliterate these obstacles"). In this case, Appellant never sought to modify the conditions set forth in the family case plan. Not until this appeal was filed did Appellant ever raise an objection to the objectives set forth in her case plan.

 We disagree with Appellant's position that the conditions set forth in the family case plan have no bearing on her fitness to be a good mother to her children. As we stated in *West Virginia Department of Human Services v. Peggy F.*, 184 W.Va. 60, 399 S.E.2d 460 (1990), "the ultimate goal is restoration of a stable home environment, not simply meeting the requirements of the case plan." *Id.* at 64, 399 S.E.2d at 464. Since Appellant's primary problem as a parent was her inability to provide even a "minimum

level of care" for her children,[15] the inclusion of conditions designed to encourage Appellant to acquire a high school equivalency diploma and employment does not appear unreasonable to this Court.[16] Family case plans are to be designed with the overriding goal of "identifying family problems and the logical steps to be used in resolving or lessening those problems." W. Va.Code § 49–6D–3(a). The facts in this case support the goals delineated in the family case plan. Provision of shelter and financial support for children is one of the most basic components of parental responsibility. The DHHR, along with Appellant, determined that without employment Appellant was unlikely to ever graduate from her current level of failing to provide for her children. Requiring her to attend GED classes was simply a related method of helping her to secure a job. Thus, we conclude that the conditions of the improvement period and the family case plan were expressly tailored to address Appellant's problems with parenting her children.[17] *See In re Renae Ebony W.*, 192 W.Va. 421, 426–27, 452 S.E.2d 737, 742–43 (1994) (discussing "importance of . . . crafting improvement periods in a manner designed to remedy the problem that led to the abuse and neglect action"); *see also State v. Julie G.*, 201 W.Va. 764, 776, 500 S.E.2d 877, 889 (1997) (Workman, J., dissenting) ("recognizing that court's determination at the conclusion of the improvement period in an abuse/neglect case involves a decision regarding 'whether sufficient improvement has been made in the context of all the circumstances of the case to justify the return of the child' ") (citing syl. pt. 6, in part, *Carlita B.*, 185 W.Va. at 616, 408 S.E.2d at 368).

After fully reviewing Appellant's contentions in conjunction with the record in this case, we find no abuse of discretion with regard to the trial court's decision not to extend the post-adjudicatory improvement period. Under the statutory language of West Virginia Code § 49–6–12(g), the trial court properly denied Appellant's request for an extension, given her failure to comply with the improvement period conditions and the trial court's conclusion that an extension would not be in the best interests of Jamie and Thomas H. As to Appellant's contention that the trial court wrongly examined her conduct during the post-adjudicatory improvement period with regard to the conditions of obtaining employment and working towards her GED, we determine that she failed to timely object to such conditions or to seek a modification of the family case plan setting forth those conditions.

■ While Appellant has not raised the sufficiency of the trial court's dispositional order, we address this issue *sua sponte*. As we recognized in *State v. Michael M.*, 202 W.Va. 350, 504 S.E.2d 177 (1998), a circuit court may

> [u]pon a finding that there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future, and when necessary for the welfare of the child, terminate the parental, custodial or guardianship rights and/or responsibilities of the abusing parent and commit the child to the permanent sole custody of the nonabusing parent, if there be one, or, if not, to either the permanent guardianship of the state department or a licensed child welfare agency.

**15.** This observation was made by the guardian ad litem at the February 2, 1998, adjudicatory hearing.

**16.** While we are not unmindful of the argument raised by Appellant that both a job and pursuit of her GED would take her away from her children, we do not perceive sincerity or proper motivation in Appellant's suggestion that she should be permitted to stay at home and spend more time with her children, rather than being forced out of the home to work or acquire an educational degree. Given Appellant's track record of ignoring the basic needs of her children while she pursued her own interests, such as alcohol consumption, plus her repeated stints of incarcera-

tion, we find it difficult to believe that Appellant genuinely desires to stay at home for the benefit of nurturing her children.

**17.** Even more important, however, is the fact that Appellant's parental rights, as the record makes clear, were terminated for reasons far more crucial to the issue of whether Appellant was meeting minimal standards for parenting, as opposed to her failure to obtain a GED or housing. This Court, and the court below, would be unlikely to terminate parental rights solely on the basis of failure to acquire a GED or adequate housing.

*Id.* at 357, 504 S.E.2d at 184 (quoting W. Va.Code § 46-6-5(a)(6)). We observed in *Carlita B.* that the finding required by West Virginia Code § 46-6-5(a)(6) concerning the absence of a "reasonable likelihood that the conditions of abuse and neglect could be substantially corrected in the near future" is a "prerequisite to termination of parental rights." 185 W.Va. at 622, 408 S.E.2d at 374 n. 11. The dispositional order entered by the circuit court on July 13, 1998, in connection with the June 22, 1998, hearing does not track the language of West Virginia Code § 46-6-5(a)(6). Upon a review of the transcript from the dispositional hearing, however, we are convinced that the trial court first reached the conclusions required by West Virginia Code § 46-6-5(a)(6) before terminating Appellant's parental rights.[18] As to the issue of termination of rights,[19] we find no basis for reversing the lower court's findings. *See Tiffany S.,* 196 W.Va. at 225-26, 470 S.E.2d at 179-80, syl. pt. 1.

 It is of concern to this Court that, although there was evidence in the record of a parent/child emotional bond,[20] the court and counsel for Appellant appear to have totally dropped the ball as to the possibility of a post-termination relationship. We directed in syllabus point five of *In re Christina L.,* 194 W.Va. 446, 460 S.E.2d 692 (1995) that:

> When parental rights are terminated due to neglect or abuse, the circuit court may nevertheless in appropriate cases consider whether continued visitation or other contact with the abusing parent is in the best interest of the child. Among other things, the circuit court should consider whether a close emotional bond has been established between parent and child and the child's wishes, if he or she is of appropriate maturity to make such request. The evidence must indicate that such visitation or continued contact would not be detrimental to the child's well being and would be in the child's best interest.

While it does not appear that a formal petition seeking a post-termination relationship was filed, Appellant's counsel did inquire at the dispositional hearing regarding the circuit court's position on post-termination visitation. The trial court indicated that it would take the matter under advisement, while admitting on the record that it was disinclined to permit such visitation. It appears that a ruling was never issued on the subject; however, during the oral argument of this case DHHR represented that a hearing was finally to be held on this issue on May 14, 1999. If indeed such a hearing took place, it occurred almost a year after the issue of post-termination visitation was first raised. We find it utterly irresponsible that such a lengthy time period passed with no resolution of this issue. If the bond that once existed between these children and their mother is determined to be worth preserving, then the children have been detrimentally affected by this lengthy period of time with no contact.

Finally, we have once again determined that there has been no resolution as to the

---

18. The order is similarly deficient in that it fails to state the following:
(1) That continuation in the home is not in the best interest of the child and why; (2) why reunification is not in the best interests of the child; (3) whether or not the department made reasonable efforts, with the child's health and safety being the paramount concern, to preserve the family and to prevent the placement or to eliminate the need for removing the child from the child's home and to make it possible for the child to safely return home, or that the emergency situation made such efforts unreasonable or impossible; and (4) whether or not the department made reasonable efforts to preserve and reunify the family including a description of what efforts were made or that such efforts were unreasonable due to specific circumstances.

W.Va.Code § 49-6-5(a)(6). Upon a thorough review of the transcript from the dispositional hearing, we are satisfied that the trial court considered each of these factors prior to making its ruling of termination.

19. We are not clear as to whether Appellant is even appealing the issue of termination as the petition for appeal seeks only a remand to the circuit court, ostensibly to revisit the issue of the lower court's denial of an extension of the improvement period.

20. The guardian ad litem acknowledged at the June 22, 1998, hearing that he had "no doubt that they [Jamie and Thomas H.] love their mother. The bond of the children toward the mother is strong in this case and they love her."

paternal rights with respect to one of the two minor children involved. During the course of this proceeding, the trial court approved the request of the biological parent of Jamie H. to voluntarily relinquish his parental rights. While the biological father of Thomas H. was both located and, in fact, appeared at the February 2, 1998, adjudicatory proceeding, the record does not reflect the termination of such parent's rights to Thomas H.[21] Obviously, without a voluntary or involuntary termination of parental rights, there can be no permanent placement of Thomas H. As we recognized in *Christina L.*, "[d]angling, unresolved parental rights . . . have a chilling effect on potential adoptive parents." 194 W.Va. at 456, 460 S.E.2d at 702; *see* W. Va.Code § 49–6–1 (requiring abuse/neglect petition to be served on both parents). And, as we discover all too often in these cases, there is no permanency plan that has been filed by the DHHR concerning its recommended placement of these two children.

Based upon the foregoing, the decision of the Circuit Court of Braxton County is hereby affirmed as to the issue of termination and the denial of an extension of the post-adjudicatory improvement period. We are forced to remand this case, however, due to the apparently unresolved issue of post-termination visitation.[22] In the event that the lower court has still not ruled on the issue of a post-termination relationship between Appellant and her children, we direct the lower court to make a ruling on such issue post haste pursuant to this Court's directives in *Christina L.* *See* Syl. Pt. 5, 194 W.Va. at 448, 460 S.E.2d at 694. Because the paternal rights with regard to Thomas H. have never been resolved and because no permanency plan[23] has apparently ever been prepared and submitted to the circuit court, we remand this case for resolution of those two specific issues.

Affirmed; Remanded with Direction.

---

21. The trial court determined only that the father of Thomas H. had been regularly making child support payments in the amount of $141.50 and that such individual desired no visitation with his son.

22. We recognize that a hearing resolving this issue may have been held on May 14, 1999, but to this Court's knowledge no order resolving this issue has been entered.

23. We observe that had a permanency plan been approved by the circuit court as required by West Virginia Code § 49–6–5a (permanency hearing must be held within thirty days of dispositional hearing wherein reunification is ruled out), then under the provisions of Rule 39 of the Rules of Procedure for Abuse and Neglect Proceedings, the trial court would have been obligated to hold periodic review conferences concerning the placement plan "[a]t least once every three months until permanent placement [wa]s achieved."