**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **W.R., C.R., and B.R.**

**No. 24-41** (Putnam County CC-40-2021-JA-75, CC-40-2021-JA-76, and CC-40-2021-JA-77)

**MEMORANDUM DECISION**

Petitioner Mother H.F.[1] appeals the Circuit Court of Putnam County's December 27, 2023, order terminating her parental rights to W.R., C.R., and B.R.,[2] arguing that the circuit court erred by terminating her parental rights based on the evidence. Upon our review, we determine that oral argument is unnecessary and that a memorandum decision affirming the circuit court's order is appropriate. *See* W. Va. R. App. P. 21.

In August 2021, the DHS filed a petition alleging that the petitioner and W.R. tested positive for amphetamine and methamphetamine upon that child's birth. After initially claiming that the drug screens portrayed false positives, the petitioner later admitted she was recently in a van with two friends who were smoking methamphetamine. The father disclosed to the DHS that the petitioner abused methamphetamine several times during her pregnancy. The petition further alleged that prior to W.R.'s birth, the petitioner's illicit substance use affected her ability to care for C.R. and B.R. and that she permitted an inappropriate individual to temporarily care for these children while she was giving birth to W.R.

At an adjudicatory hearing held in October 2021, the petitioner stipulated to the allegations in the petition, admitting, among other things, that her drug use seriously impaired her parenting skills and abilities and that her actions harmed and/or threatened the physical and/or mental health

---

[1] The petitioner appears by counsel Gordon L. Mowen II. The West Virginia Department of Human Services appears by counsel Attorney General Patrick Morrisey and Assistant Attorney General Heather L. Olcott. Counsel Catherine Bond Wallace appears as the children's guardian ad litem ("guardian").

Additionally, pursuant to West Virginia Code § 5F-2-1a, the agency formerly known as the West Virginia Department of Health and Human Resources was terminated. It is now three separate agencies—the Department of Health Facilities, the Department of Health, and the Department of Human Services. *See* W. Va. Code § 5F-1-2. For purposes of abuse and neglect appeals, the agency is now the Department of Human Services ("DHS").

[2] We use initials where necessary to protect the identities of those involved in this case. *See* W. Va. R. App. P. 40(e).

of the children.[3] Therefore, the circuit court adjudicated the petitioner and found all three children to be abused and neglected. The petitioner thereafter filed a motion for a post-adjudicatory improvement period, which the court granted at a hearing held in February 2022 based on the recommendation of the guardian. However, the court terminated the petitioner's post-adjudicatory improvement period upon the DHS's motion at a hearing held in June 2022. Counsel for the DHS proffered that the petitioner was continuing to have contact with the father whose parental rights had been terminated, she missed multiple drug screens, and C.R. did not want contact with her. The guardian advised that the petitioner had also missed several visits with the children and that C.R. exhibited behavioral issues following visits. The court scheduled the matter for disposition, allowing the petitioner to continue participating in services and visits in the interim.

The circuit court then held a series of dispositional hearings, during which the DHS and guardian supported termination. Despite evidence that the petitioner tested positive for methamphetamine sporadically and as recently as December 2022; resided with the maternal grandmother, who had also been testing positive for methamphetamine; kept in contact with the father; and did not appear for visits with the children, the court granted the petitioner's request for a post-dispositional improvement period at a hearing in March 2023. Thereafter, at a hearing held in June 2023, counsel for the DHS advised that the petitioner had an additional positive screen for methamphetamine since the previous hearing. The guardian proffered that it was in the children's best interests not to be reunified with the petitioner because the case had been pending "close to two years and through that time we've not made any progress with the kids" as there was no bond between the petitioner and the children.

At an evidentiary hearing in August 2023, two witnesses described the petitioner's failure to consistently attend visits with the children and her lack of a bond with them. Further evidence indicated that C.R. and B.R. eventually refused visits, as they were traumatized by the petitioner's conduct, and both C.R. and B.R. exhibited behavioral issues following the limited visits. Additionally, although the petitioner had recently been screening negative for substances, she ceased participation in parenting and adult life skills classes and still resided with the grandmother who continued to test positive for methamphetamine. However, the petitioner testified that she only missed visits with the children because of miscommunications with the service provider, traffic issues, a doctor appointment, and drug screening requirements. She conceded that she had not made efforts to contact the service providers regarding her parenting and adult life skills classes, stating, "I mean she hasn't contacted me." On cross-examination, when asked if the petitioner "recognize[d] . . . the level of chaos and drugs that were going on in [her] household when this petition was filed," she responded, "I mean I don't know of anything happening." Based on all the foregoing, the court terminated the petitioner's improvement period and scheduled the matter for a final dispositional hearing.

---

[3] Although there was conflicting testimony throughout the case regarding the county in which the petitioner resided at different points during the proceedings, the petitioner stipulated to residing in Putnam County, West Virginia, at the time that the petition was filed. *See* W. Va. Code § 49-4-601(a) ("[T]he department . . . may present a petition . . . in the county in which the child resides, or . . . in the county in which the custodial respondent or other named party abuser resides . . . .").

A final dispositional hearing was held in November 2023, at which time the petitioner admitted that she had not obtained independent housing, as she was still residing with the grandmother; missed recent drug screens and visits with the children; and had recently been fired from her job. Furthermore, the petitioner received a letter in October 2023 from a service provider, which advised that because the petitioner had not responded to communication efforts or complied with services, she was being deemed noncompliant. However, the petitioner claimed that she was noncommunicative with the service provider because "I felt like she wasn't going to respond back to me." The circuit court ultimately terminated the petitioner's parental rights. The court stated that although the petitioner had "been on the cusp of maybe getting to where she needed to get in order to be successful," and had been given "every opportunity" to improve, she failed to do so. Therefore, the court found that there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected in the near future. Furthermore, the court found that the petitioner was unwilling or unable to care for or provide for the children and that termination was necessary for the children's welfare. It is from the final dispositional order that the petitioner appeals.[4]

On appeal from a final order in an abuse and neglect proceeding, this Court reviews the circuit court's findings of fact for clear error and its conclusions of law de novo. Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). The petitioner argues that the circuit court erred by terminating her parental rights based on the evidence. Upon our review of the record, we disagree.

A circuit court is permitted to terminate an individual's parental rights "[u]pon a finding that there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future and, when necessary for the welfare of the child." W. Va. Code § 49-4-604(c)(6). Here, although the petitioner insists that she "overcame" her drug use and corrected the conditions of abuse and neglect, the record reveals that she tested positive for methamphetamine throughout the case and did not consistently appear for drug screens. Despite the petitioner's argument that she missed drug screens for justifiable reasons, the court clearly weighed the evidence, and we refuse to overturn its determination in that regard. *See State v. Guthrie*, 194 W. Va. 657, 669 n.9, 461 S.E.2d 163, 175 n.9 (1995) ("An appellate court may not decide the credibility of witnesses or weigh evidence as that is the exclusive function and task of the trier of fact."). The petitioner further asserts that the uncontroverted evidence at the dispositional hearing showed that she made improvements such as maintaining employment and securing housing. However, the petitioner ignores her own testimony that she was fired from her job. Furthermore, her residence with the grandmother was determined to be inappropriate based on the grandmother's positive drug screens for methamphetamine, and the petitioner admitted at disposition that she had yet to obtain independent housing. Moreover, the petitioner admitted to failing to appear for visits. In that regard, we have previously stated that "the level of interest demonstrated by a parent in visiting his or her children while they are out of the parent's custody is a significant factor in determining the parent's potential to improve sufficiently and achieve minimum standards to parent the child." *In re Katie S.*, 198 W. Va. 79, 90 n.14, 479 S.E.2d 589,

---

[4] The father's parental rights were also terminated during the proceedings, and the permanency plan for the children is adoption by their foster placement.

600 n.14 (1996) (citations omitted). Therefore, the record clearly reveals that it was proper for the court to find that there was no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future.

We can also discern no error in the circuit court's finding that termination was necessary for the children's welfare based on the testimony regarding ongoing issues with visits, the children's persistent trauma, and the petitioner's lack of a bond with the children. Although the petitioner asserts that the court should not have relied on this evidence when it was not presented at the final dispositional hearing, but instead at a prior hearing during the dispositional phase when her post-dispositional improvement period was terminated, the petitioner cites to no authority that would disallow the lower court from considering relevant evidence of this nature. The petitioner further argues that because the dispositional order tracks the language of both West Virginia Code §§ 49-4-604(c)(5) and 604(c)(6), it must be vacated. However, the petitioner ignores that this Court has upheld termination of rights where "[t]he dispositional order entered by the circuit court . . . does not track the language of West Virginia Code [§ 49-4-604]" when the Court was convinced, after reading the dispositional hearing transcript, that "the trial court first reached the conclusions required by [West Virginia Code § 49-4-604(c)(6)] before terminating" those rights. *In re Jamie Nicole H.*, 205 W. Va. 176, 184, 517 S.E.2d 41, 49 (1999). Accordingly, we see no error in the circuit court's termination of the petitioner's parental rights.

For the foregoing reasons, we find no error in the decision of the circuit court, and its December 27, 2023, order is hereby affirmed.

Affirmed.

**ISSUED**: November 6, 2024

**CONCURRED IN BY**:

Chief Justice Tim Armstead
Justice Elizabeth D. Walker
Justice John A. Hutchison
Justice William R. Wooton
Justice C. Haley Bunn