**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

*In re* **R.W., H.S., and W.S.**

**No. 25-337** (Ohio County CC-35-2023-JA-103, CC-35-2023-JA-104, and CC-35-2023-JA-105)

## MEMORANDUM DECISION

Petitioner Mother H.B.[1] appeals the Circuit Court of Ohio County's April 25, 2025, order terminating her parental rights, arguing that the court did not timely hold the dispositional hearing, failed to grant her a less restrictive disposition, erred in finding that termination was in the children's best interest, and failed to require the DHS to make reasonable efforts to achieve reunification.[2] Upon our review, we determine that oral argument is unnecessary and that a memorandum decision affirming the circuit court's order is appropriate. *See* W. Va. R. App. P. 21.

The DHS filed a petition in July 2023, alleging that the petitioner's home was dirty, unsanitary, and lacked electricity. The DHS also alleged that, in a 2020 abuse and neglect proceeding, the petitioner was adjudicated as an abusive and/or neglectful parent because she had exposed the children to inappropriate people with mental health issues who engaged in substance abuse, domestic violence, and sexual assault of the children. Despite her successful completion of an improvement period and ultimate reunification with the children in July 2021, the petitioner had again allowed inappropriate people to reside in the home and, at times, left the children unsupervised with one of these individuals. The DHS further alleged that the petitioner abused substances impairing her ability to parent and that some of "the random people" the petitioner permitted in and around her home also engaged in substance abuse.

At an adjudicatory hearing in September 2023, the petitioner submitted a written stipulation, admitting that she was a neglectful parent as she had "expose[d] her children to inappropriate people who have mental health and drug issues who engage in substance abuse." She also stipulated to the home's poor condition, including the lack of electricity. On this basis, the circuit court adjudicated the petitioner as an abusive and/or neglectful parent, and found that R.W., H.S., and W.S. were abused and/or neglected children.

---

[1] The petitioner appears by counsel Dana A. Jackson. The Department of Human Services ("DHS") appears by counsel Attorney General John B. McCuskey and Assistant Attorney General Wyclif S. Farquharson. Counsel Joseph J. Moses appears as the children's guardian ad litem ("guardian").

[2] We use initials where necessary to protect the identities of those involved in this case. *See* W. Va. R. App. P. 40(e).

The petitioner subsequently requested a post-adjudicatory improvement period, which the circuit court denied at a hearing in July 2024. The court noted that despite the petitioner's participation in the prior abuse and neglect proceeding, she did not benefit from intervention and continued to make extremely poor parenting decisions including—by her own admission—"giving [R.W.] drugs." Shortly thereafter, the petitioner filed a self-represented motion requesting new counsel, and in August 2024, the petitioner's then-counsel filed a motion to withdraw. The circuit court promptly granted this motion and appointed new representation for the petitioner. In October 2024, the court granted the petitioner's motion to continue disposition to permit her new counsel additional time to prepare. The petitioner also filed a motion requesting a post-dispositional improvement period.

At a dispositional hearing in January 2025, a senior Child Protective Services ("CPS") worker testified that the petitioner actively participated in supervised visitation with the children, but described a troubling incident where R.W. ran away from her placement and the petitioner tracked her down but later denied having seen the child. The case's current CPS worker testified that the DHS recommended termination,[3] citing the petitioner's "ongoing issues" and chronic abuse and neglect of the children. She noted that the petitioner had been compliant with drug screening but tested positive for alcohol on a few occasions and once for cocaine. Lastly, the CPS worker testified that the DHS had no additional services to offer, since the petitioner's receipt of services in the 2020 proceeding—including individual therapy and parenting classes—did not lead to permanent change.

The dispositional hearing was continued to February 2025 and again to April 2025, at which time the court heard testimony from the psychologist who conducted forensic evaluations of the petitioner and R.W.[4] The psychologist stated that the petitioner had an "extremely poor prognosis for improvement" and would not benefit from additional services, noting that she had continued to make poor decisions after receiving services in the prior proceeding and did not display insight or sincerely accept responsibility. During her evaluation, the petitioner made excuses, attempted to justify her behavior, and "blamed everyone but herself." The psychologist believed that continued contact with the petitioner would "prolong[] the children's trauma and prevent[] them from getting closure and permanency." During R.W.'s psychological evaluation, the child admitted to becoming "involved with drug use[] and criminal activity . . . at a very young age" and the psychologist attributed R.W.'s serious mental health issues to "years of consistent lack of supervision" and "exposure to inappropriate people," among other things. The psychologist concluded that the petitioner was "not an appropriate person to take care of a troubled adolescent" and that it was therefore in R.W.'s best interest to "have no contact with her mother."

---

[3] Due to the then-seventeen-year-old R.W.'s having nearly reached the age of majority, the CPS worker stated that a disposition pursuant to West Virginia Code § 49-4-604(c)(5) could be appropriate for that child.

[4] The psychologist testified as an expert witness and her corresponding reports regarding R.W. and the petitioner (dated February 11, 2024, and June 14, 2024, respectively) were admitted into evidence.

The petitioner testified that she would fully participate in a post-dispositional improvement period and detailed her efforts to remedy the conditions of abuse and neglect, such as completing multiple parenting classes, taking antidepressant medication as prescribed, and participating in individual therapy. The petitioner claimed to have improved her judgment but acknowledged that she had consumed alcohol on a few occasions during the case, explaining that she "was just overwhelmed" and "kn[ew] [she] shouldn't have drank." However, she denied using cocaine, claiming that her positive screen must have resulted from physical contact with the substance at her previous job. In regard to the prior abuse and neglect proceedings, the petitioner claimed that her improvement period was ineffective because many services were conducted remotely due to the COVID-19 pandemic.

The petitioner's supervised visitation provider testified that she interacted appropriately with the children and that they shared "a loving and caring relationship." The petitioner's niece testified that even though the current petition arose (in part) from her report to police about the children's welfare, she had since observed "a huge change" in the petitioner who had "step[ped] up" and displayed "more motivation and drive." A CPS supervisor testified that the DHS continued to recommend termination. The guardian similarly recommended termination of the petitioner's parental rights to H.S. and W.S. and stated that he would understand "if the court decide[d] to terminate [the petitioner's] rights to [R.W.]" as well. However, the guardian related that R.W. wished for the petitioner's parental rights to remain intact.

Based on this evidence, the circuit court found that the petitioner's prior case involved "strikingly similar issues" to the present case and that the petitioner chose not to continue individual therapy or take other action "to address [her] . . . underlying issues" after being reunited with her children. The court expressed concern regarding the petitioner's "long, troubling practice of very poor judgment and decision making that exposed these children to a parade . . . of very inappropriate individuals." The court further stressed that the cycle of the petitioner's abuse resulted in extensive trauma to the children. In its subsequent written order, the court denied the petitioner a post-dispositional improvement period, as she failed to prove that she would fully participate and concluded that such an improvement period would be futile because of the past provision of services and the psychologist's testimony that she was incapable of addressing the issues. Accordingly, the court terminated the petitioner's parental rights to R.W., H.S., and W.S., having concluded that there was no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected in the near future and that termination was in the children's best interest and necessary for their welfare.[5] The petitioner now appeals this dispositional order.

On appeal from a final order in an abuse and neglect proceeding, this Court reviews the circuit court's findings of fact for clear error and its conclusions of law de novo. Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). The petitioner first asserts that the circuit court erred by failing to hold a dispositional hearing in accordance with Rule 32 of the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings, which provides that a "disposition

---

[5] H.S. and W.S.'s father's parental rights were previously terminated, and the permanency plan for these children is adoption in the current placement. R.W.'s father was granted a disposition pursuant to West Virginia Code § 49-4-604(c)(5) in a prior proceeding. R.W. reached the age of majority while this appeal was pending.

3

hearing shall commence within forty-five . . . days of the entry of the final adjudicatory order unless an improvement period is granted." While the petitioner's disposition did not occur within this timeframe, her argument nevertheless lacks merit. Not only did the petitioner fail to object below to the delay, but the timing of her disposition resulted, in part, from the court's need to hold a hearing regarding her contested request for a post-adjudicatory improvement period, her subsequent request for new representation, and her request for continuance to permit her new attorney additional time to prepare. As such, the petitioner is not entitled to relief.[6]

Next, the petitioner asserts that the circuit court erred in failing to grant her a post-dispositional improvement period or other less restrictive alternative to the termination of her parental rights. West Virginia Code § 49-4-610(3)(B) permits a circuit court to grant a post-dispositional improvement period when a parent "demonstrates, by clear and convincing evidence, that [she] is likely to fully participate." However, circuit courts have discretion to deny an improvement period when improvement is unlikely. *See In re Tonjia M.*, 212 W. Va. 443, 448, 573 S.E.2d 354, 359 (2002). Moreover, "[t]ermination of parental rights . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood . . . that conditions of neglect or abuse can be substantially corrected." Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011) (quoting Syl. Pt. 2, *In re R.J.M.*, 164 W. Va. 496, 266 S.E.2d 114 (1980)); *see also* W. Va. Code § 49-4-604(c)(6). Ample evidence supports the circuit court's finding that an improvement period would be futile. That same evidence indicates that there was no reasonable likelihood that the petitioner could substantially correct the conditions of abuse and neglect.[7] It is undisputed that the petitioner continued to neglect the children by exposing them to inappropriate people despite her participation in services aimed at addressing this very issue in an earlier proceeding. The court therefore found that the petitioner had a "long, troubling practice of very poor judgment and decision making" and noted this Court's precedent that additional improvement periods are "futile" when—as here—a parent has previously received services only to continue his or her abusive or neglectful behavior. *See State ex rel. W. Va. Dep't of Health & Hum. Res. v. Dyer*, 242 W. Va. 505, 520, 836 S.E.2d 472, 487 (2019). Further, citing the evaluating psychologist's expert testimony, the court found that the petitioner's mental health issues impaired her ability to address her parenting deficiencies. As such,

---

[6] The petitioner also objects to the court's consideration of her psychological evaluation, arguing that the DHS obtained this prejudicial evidence more than forty-five days following adjudication. This argument similarly lacks merit, as the petitioner did not object to the report's admission below. As such, the petitioner has waived this issue. *See Noble v. W. Va. Dep't of Motor Vehicles*, 223 W. Va. 818, 821, 679 S.E.2d 650, 653 (2009) ("'Our general rule is that nonjurisdictional questions . . . raised for the first time on appeal, will not be considered.' *Shaffer v. Acme Limestone Co., Inc.*, 206 W.Va. 333, 349 n. 20, 524 S.E.2d 688, 704 n. 20 (1999).").

[7] The petitioner additionally argues that the circuit court failed to afford sufficient weight to her testimony that she had taken steps to resolve her deficiencies, would participate in an improvement period, and could correct the conditions of abuse or neglect. However, this Court "do[es] not reweigh the evidence or make credibility determinations." *In re D.S.*, 251 W. Va. 466, 472, 914 S.E.2d 701, 707 (2025); *see also State v. Guthrie*, 194 W. Va. 657, 669 n.9, 461 S.E.2d 163, 175 n.9 (1995) ("An appellate court may not decide the credibility of witnesses or weigh the evidence as that is the exclusive function and task of the trier of fact.").

4

the petitioner "demonstrated an inadequate capacity to solve the problems of abuse or neglect on [her] own or with help." W. Va. Code § 49-4-604(d) (defining "[n]o reasonable likelihood that conditions of neglect or abuse can be substantially corrected"). We therefore find no error in the court's denial of a post-dispositional improvement period or its failure to impose a less restrictive disposition than termination.

The petitioner further asserts that the circuit court erred in finding that termination was in the children's best interest. At the outset, we note that the petitioner correctly cites West Virginia Code § 49-4-604(c)(6) as delineating the required findings to support termination of parental rights; however, this governing statute permits termination when a court finds that it is "necessary for the welfare of the child[ren]," in addition to finding that "there is no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future." Thus, we first address the court's finding regarding the children's welfare. We have explained that this "requirement concerns . . . the particular needs of the child[ren] as pertains to [their] physical and emotional well-being." *See In re A.P.*, 245 W. Va. 248, 255, 858 S.E.2d 873, 880 (2021). The court's statements on the record at disposition and in its subsequent order make clear that it made the proper considerations. The court noted that the petitioner's history of exposing the children to a "parade" of inappropriate people resulted in a cycle of abuse and trauma and that the children required caregivers equipped to address their unique needs. The court also cited R.W.'s "ongoing issues," imploring the petitioner to continue with therapy despite the termination of her parental rights, as R.W. would "be turning [eighteen] . . . soon and [would] likely want to reunite with her mother."[8] Accordingly, we conclude that the circuit court did not err in finding that termination was necessary for the children's welfare. The petitioner additionally argues that the circuit court failed to make specific findings regarding why reunification and continuation in her home were not in the children's best interests, as required by West Virginia Code § 49-4-604(c)(6)(C)(i) and (ii). However, the court *did* find that termination was in the children's best interest, which implicitly encompasses that reunification and continuation in her home were *not*. Regardless, this Court has upheld terminations and found dispositional orders to be adequate even though the order did "not track the language" of the governing statute where the Court's review of the transcript reveals that the circuit court reached the requisite conclusions before terminating a party's parental rights. *See In re Jamie Nicole H.*, 205 W. Va. 176, 184, 517 S.Ed.2 41, 49 (1999). Because the

---

[8] In an additional assignment of error, the petitioner argues that the circuit court failed to consider R.W.'s wish that the petitioner's parental rights remain intact. At disposition, West Virginia Code § 49-4-604(c)(6)(C) requires a circuit court to "give consideration to the wishes of a child [fourteen] years of age or older . . . regarding the permanent termination of parental rights." However, "[a] circuit court is not obligated to comply with the child's wishes, but shall make the termination decision based upon a consideration of the child's best interests." Syl Pt. 4, in part, *In re J.A.*, 242 W. Va. 226, 833 S.E.2d 487 (2019). The record before us establishes that the circuit court did consider R.W.'s wishes. The court was presented with R.W.'s preference as well as additional evidence, including the psychologist's recommendation that the troubled adolescent have no further contact with the petitioner, and the court ultimately concluded it was necessary to terminate the petitioner's rights to all three children—including R.W. We will not reweigh the evidence. *See In re D.S.*, 251 W. Va. at 472, 914 S.E.2d at 707. Accordingly, we decline to disturb this finding on appeal.

circuit court made both findings required by West Virginia Code § 49-4-604(c)(6), based upon ample evidence, we find no error in the termination of the petitioner's rights.

Finally, the petitioner asserts that the circuit court did not consider the DHS's failure to make reasonable reunification efforts before terminating her rights. However, the record does not support a finding that the DHS failed in this regard. In fact, the record shows that the DHS provided services to the petitioner, including supervised visits and drug screens, in accordance with West Virginia Code § 49-4-604(c)(7). *See also In re K.V.*, 251 W. Va. 418, 426, 914 S.E.2d 517, 525 (2025) (explaining that the "DHS has a statutory obligation to provide services as a prerequisite to . . . termination"). While the petitioner takes issue with the breadth of the DHS's services, we conclude that, under the facts of this case, the level of services provided to the petitioner was reasonable given that the petitioner failed to benefit from more comprehensive services offered in the prior proceeding, as evidenced by her resumed neglect of the children. As such, she is not entitled to relief.

For the foregoing reasons, we find no error in the decision of the circuit court to terminate the petitioner's parental rights, and its April 25, 2025, order is hereby affirmed.

Affirmed.

**ISSUED**: March 3, 2026

**CONCURRED IN BY**:

Chief Justice C. Haley Bunn
Justice William R. Wooton
Justice Charles S. Trump IV
Justice Thomas H. Ewing
Justice Gerald M. Titus III