# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

*In re* **M.H., A.H., and A.M.**

**No. 25-388** (Cabell County CC-06-2023-JA-42, CC-06-2023-JA-43, and CC-06-2023-JA-44)

## MEMORANDUM DECISION

Petitioner Mother C.S.[1] appeals the Circuit Court of Cabell County's May 13, 2025, order terminating her parental rights to M.H., A.H., and A.M.,[2] arguing that the circuit court failed to make the necessary findings to terminate parental rights or consider alternative dispositions. Upon our review, we determine that oral argument is unnecessary and that a memorandum decision affirming the circuit court's order is appropriate. *See* W. Va. R. App. P. 21.

In April 2023, the DHS filed a petition alleging that the petitioner's drug abuse had resulted in the neglect of the children. According to the DHS, then-twelve-year-old M.H. reported that she found a white substance wrapped in plastic, syringes, and a bag full of pill bottles and needles in the home and discovered the petitioner unconscious in the bathroom with a hypodermic needle. She also reported that the petitioner fell asleep multiple times while driving with her and her sisters and almost hit a pole on one occasion. On August 14, 2023, the circuit court held an adjudicatory hearing. The petitioner admitted that her drug use affected her ability to parent the children. In addition, the petitioner testified that she used heroin the day before and was entering a substance abuse treatment program.[3] The court adjudicated the petitioner as an abusing and neglecting parent and M.H., A.H., and A.M. as abused and neglected children.

Following the adjudicatory hearing, the petitioner filed a motion for a post-adjudicatory improvement period, which the court granted. The DHS also filed a family case plan specifying that the petitioner was to participate in substance abuse counseling and therapy services, complete an inpatient drug treatment program and cooperate with outpatient services, take random weekly drug screens, and refrain from associating with drug users. Over the next year, the petitioner entered a new substance abuse treatment program and participated in family functional therapy

---

[1] The petitioner appears by counsel Whitney Nicole Davis. The West Virginia Department of Human Services ("DHS") appears by counsel Attorney General John B. McCuskey and Assistant Attorney General Andrew T. Waight. Counsel Moriah N. Myers appears as the children's guardian ad litem ("guardian").

[2] We use initials where necessary to protect the identities of those involved in this case. *See* W. Va. R. App. P. 40(e).

[3] The petitioner left this program after one week.

1

with A.H. and M.H. and a bonding evaluation with A.M., as she was too young to participate in family therapy. However, at a status hearing in August 2024, the DHS reported that the petitioner missed three drug screens in July 2024 and missed multiple parenting classes. At a hearing in October 2024, the DHS reported that the petitioner tested positive for marijuana and stopped participating in parenting services. The DHS requested termination of the petitioner's parental rights.

In February 2025, the circuit court held a dispositional hearing. The guardian presented expert testimony from the psychologist who conducted A.M.'s bonding evaluation. The psychologist explained that the petitioner's substance abuse led to multiple disruptions in A.M.'s primary caregiver relationships and caused A.M. to spend a substantial portion of her life outside of the petitioner's care. He opined that the petitioner and A.M. had no relationship to maintain and that reintroducing the petitioner to A.M. after more than one year of stability in her kinship placement would cause A.M. to experience emotional distress, behavioral disruptions, and functional regression. Next, the circuit court heard testimony from the family functional therapist, who explained that she provided therapy sessions to the petitioner, A.H., and M.H. on a weekly basis from May 2024 through August 2024 to reduce the children's negative feelings towards the petitioner and assess whether the parent-child relationship was salvageable. The therapist recommended no further contact between the children and the petitioner because the children maintained that they wanted no contact with the petitioner and additional therapy would not be beneficial. The circuit court then continued the hearing.

Prior to the final dispositional hearing, the DHS submitted a summary reporting that the petitioner "continued to be non-compliant with individualized parenting services." At the final dispositional hearing in March 2025, the petitioner admitted to missing drug screens and parenting sessions throughout the case. She testified that she had been abusing substances since 2015 with multiple cycles of sobriety and relapse and had been attempting sobriety through therapy and rehabilitation since 2016. The petitioner also acknowledged that her substance abuse issues resulted in several DHS cases from 2015 through 2022 in which the children were removed multiple times. Next, a Child Protective Services worker testified that the petitioner was not consistently compliant with her case plan as she missed parenting classes and drug screens, tested positive for marijuana, and refused to go to an inpatient substance abuse treatment program. The worker also testified that the children had been in their placement for eighteen months, which was a safe and stable environment; that A.H. and M.H. maintained throughout the proceedings that they did not want contact with the petitioner; and that termination of the petitioner's parental rights was in the children's best interest. Finally, a representative from the petitioner's rehabilitation program testified that the petitioner had applied herself and was doing well.

At the conclusion of the hearing, the circuit court found that while the petitioner had periods of compliance with her case plan, "she experienced difficulties and had periods of non-compliance." The court observed that the petitioner repeatedly exposed the children to her "pervasive substance abuse and cycles of active addiction," noting that, at the time of the children's removal, they had been in the petitioner's custody for just six months following a seventeen-month period in foster care from a prior case. The court further found that "[a]ll professionals working with the children recommended no contact between the [petitioner] and the children." Thus, the court concluded that there was no less drastic alternative to the termination of the petitioner's

2

parental rights as "[t]here [was] no reasonable likelihood that the [petitioner] c[ould] substantially correct the conditions of abuse and neglect such that it [was] in the child[ren]'s best interests to be returned to the [petitioner]'s custody." After considering "how these children ha[d] fared educationally and emotionally with their current placement and the children's own feelings and emotional attachments," the court determined that termination was in the children's best interests. Accordingly, the circuit court terminated the petitioner's parental rights to A.H., M.H., and A.M.[4] It is from the dispositional order that the petitioner appeals.

On appeal from a final order in an abuse and neglect proceeding, this Court reviews the circuit court's findings of fact for clear error and its conclusions of law de novo. Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). Before this Court, the petitioner first argues that the circuit court erred in terminating her parental rights because it failed to find that there was "[n]o reasonable likelihood that conditions of neglect or abuse can be substantially corrected" and that termination was "necessary for the welfare of the child" as required by West Virginia Code § 49-4-604(c)(6). The petitioner asserts that the circuit court's finding that there was "no reasonable likelihood that the [petitioner] c[ould] substantially correct the conditions of abuse and neglect such that it [was] in the child[ren]'s best interests to be returned to the [petitioner]'s custody" was "the incorrect standard." However, the petitioner ignores that we have upheld terminations where "[t]he dispositional order entered by the circuit court . . . does not track the language of West Virginia Code [§ 49-4-604]" when the Court was convinced that "the trial court first reached the conclusions required by [West Virginia Code § 49-4-604(c)(6)] before terminating" those rights. *In re Jamie Nicole H.*, 205 W. Va. 176, 184, 517 S.E.2d 41, 49 (1999). The record demonstrates that the circuit court's findings were consistent with the conclusions required by West Virginia Code § 49-4-604(c)(6). Specifically, the court found that the petitioner was noncompliant with certain aspects of her case plan as she failed to consistently attend parenting classes, submit for drug screens, and abstain from abusing substances. *See* W. Va. Code § 49-4-604(d)(3) (providing that there is no reasonable likelihood that conditions of neglect or abuse can be substantially corrected where the abusing parent has "not responded to or followed through with a reasonable family case plan"). Additionally, the court recognized that, despite participating in various therapies and rehabilitation programs for approximately *nine years*, the petitioner continued "exposing the children to her pervasive substance abuse and cycles of active addition." *See* W. Va. Code § 49-4-604(d)(1) (providing that there is no reasonable likelihood that conditions of neglect or abuse can be substantially corrected where the abusing parent has "habitually abused or [is] addicted to alcohol, controlled substances or drugs, to the extent that proper parenting skills have been seriously impaired and . . . [has] not responded to . . . the recommended and appropriate treatment"). Further, the court made numerous findings concerning the children's need for permanency in a safe and stable environment. We have explained that "a child's welfare necessarily implicates his or her need for and entitlement to permanency." *In re A.P.*, 245 W. Va. 248, 257 n.17, 858 S.E.2d 873, 882 n.17 (2021). Accordingly, we find that the circuit court's order is sufficient.

Lastly, the petitioner argues that the circuit court erred by failing "to give appropriate precedence to alternative dispositions as detailed in and required by [West Virginia Code]

---

[4] The circuit court also terminated the parental rights of the children's respective fathers. The permanency plan for the children is adoption in their current placement.

3

§ 49-4-604(c)." The petitioner correctly contends that "[a]s a general rule, the least restrictive alternative regarding parental rights to custody of a child under West Virginia Code § 49-4-604 (2020) will be employed." Syl. Pt. 2, in part, *In re H.T.*, 250 W. Va. 11, 902 S.E.2d 143 (2024). However, she fails to recognize that

> [t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604 (2020)] may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(c)] that conditions of neglect or abuse can be substantially corrected.

*Id.* at 13, 902 S.E.2d at 145, Syl. Pt. 3 (quoting Syl. Pt. 2, *In re R.J.M.*, 164 W. Va. 496, 266 S.E.2d 114 (1980)). As detailed above, the circuit court's finding that there was no reasonable likelihood that the conditions of neglect and abuse could be substantially corrected is well-supported by the record. Moreover, imposition of a less restrictive dispositional alternative was not appropriate as it would have jeopardized the children's entitlement to permanency, which is not allowed by West Virginia Code § 49-4-604(c)(6). *See In re A.P.*, 245 W. Va. at 257 n.17, 858 S.E.2d at 882 n.17 ("[T]he 'and when necessary for the welfare' language of West Virginia Code § 49-4-604(c)(6) does not allow a court to make a dispositional election which jeopardizes a child's right to . . . permanency."). Therefore, the circuit court did not err in terminating the petitioner's parental rights.

For the foregoing reasons, we affirm the circuit court's May 13, 2025, order.

Affirmed.

**ISSUED:** May 6, 2026

**CONCURRED IN BY:**

Chief Justice C. Haley Bunn
Justice William R. Wooton
Justice Charles S. Trump IV
Justice Thomas H. Ewing
Justice Gerald M. Titus III

4