**FILED**
**November 6, 2024**

C. CASEY FORBES, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

*In re* **H.B.**

**No. 23-704** (Wood County CC-54-2020-JA-65)

## MEMORANDUM DECISION

Petitioner Father R.B.[1] appeals the Circuit Court of Wood County's November 3, 2023, order terminating his parental rights to H.B., arguing that the court erred by terminating his parental rights and denying post-termination visitation.[2] Upon our review, we determine that oral argument is unnecessary and that a memorandum decision affirming the circuit court's order is appropriate. *See* W. Va. R. App. P. 21.

In April 2020, the DHS filed a petition alleging that the petitioner engaged in domestic violence in the child's presence and had substance abuse issues that inhibited his ability to parent the child. The petitioner stipulated to these allegations at a hearing held in September 2020; therefore, the circuit court adjudicated the petitioner of abusing and neglecting the child. By the same order, the court granted the petitioner an improvement period.

Although the petitioner was initially noncompliant with the improvement period terms and was incarcerated in October 2020 for a parole violation that involved the use of marijuana, he began to participate in DHS services upon release from incarceration in January 2021. However, according to the DHS, because the then-ten-year-old child continuously expressed her wishes not to see the petitioner and the petitioner "doesn't always seem to understand what he has done," the DHS moved the court to terminate the petitioner's parental rights. The circuit court proceeded to disposition in March 2022, at which time the petitioner "consent[ed] to the termination of his parental rights." The court found that despite the DHS's reasonable efforts in reunification and the

---

[1] The petitioner appears by counsel Eric K. Powell. The West Virginia Department of Human Services appears by counsel Attorney General Patrick Morrisey and Assistant Attorney General Lee Niezgoda. Counsel Debra L. Steed appears as the child's guardian ad litem.

Additionally, pursuant to West Virginia Code § 5F-2-1a, the agency formerly known as the West Virginia Department of Health and Human Resources was terminated. It is now three separate agencies—the Department of Health Facilities, the Department of Health, and the Department of Human Services. *See* W. Va. Code § 5F-1-2. For purposes of abuse and neglect appeals, the agency is now the Department of Human Services ("DHS").

[2] We use initials where necessary to protect the identities of those involved in this case. *See* W. Va. R. App. P. 40(e).

petitioner's substantial compliance with the terms of his improvement period, "the bond between the [petitioner] and the minor child could not be repaired." Further finding that there was no reasonable likelihood that the conditions of neglect and abuse could be substantially corrected in the near future and that reunification would be contrary to the child's welfare, the court terminated the petitioner's parental rights.

The petitioner appealed the circuit court's March 25, 2022, dispositional order, with the sole assignment of error being that the court failed to comply with the requirements of Rule 35 of the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings,[3] which sets forth procedures that a circuit court must follow during a dispositional hearing when a parent does not contest termination. Because this Court was "unable to ascertain whether [the p]etitioner fully understood the consequences of his consent," we vacated and remanded the matter for a new dispositional hearing. *See In re H.B.*, No. 22-0345, 2023 WL 3885341, at *3 (W. Va. June 8, 2023) (memorandum decision).

On remand, the circuit court held a series of hearings, culminating in a final dispositional hearing in October 2023. Despite having previously consented to termination of his rights, the petitioner indicated he was now contesting termination and seeking reunification or, alternatively, post-termination visitation. Therefore, the court took judicial notice of the entire case file and allowed the parties to present evidence.

The court heard testimony from the child's therapist and a Child Protective Services ("CPS") worker, who both discussed the child's fear of her father and consistent resistance to visits. The CPS worker stated that different alternatives were discussed "in order to try to warm her up to potentially visiting in person." Therefore, the child began therapy and the father sent letters and cards. However, the therapist indicated that the letters and cards "would cause her to be very distraught," and she believed that visits would have caused the child to slide "backwards in her progression." According to the testimony of service providers, the petitioner participated in services such as individual therapy, relapse prevention, parenting classes, and drug screening. However, one service provider stated that the petitioner "ha[d] a difficult time internalizing concepts," "it was very clear . . . that he just wasn't able to absorb the information," and she was "not comfortable in saying [the petitioner] would be able to provide for the needs of his daughter." When the petitioner was asked what he believed the child would need if returned to his care, he

---

[3] In relevant part, Rule 35 provides as follows:

(a) *Uncontested Termination of Parental Rights*. If a parent voluntarily relinquishes parental rights or fails to contest termination of parental rights, the court shall make the following inquiry at the disposition hearing:

(1) If the parent is present at the hearing but fails to contest termination of parental rights, the court shall determine whether the parent fully understands the consequences of a termination of parental rights, is aware of possible less drastic alternatives than termination, and was informed of the right to a hearing and to representation by counsel.

testified in response, "just stuff she needs." Although the petitioner insisted that he and the child had a bond, he conceded that he had not seen H.B. in about three-and-one-half years. Despite previously stipulating to domestic violence and illicit substance use, the petitioner testified that he believed the child was removed from his care because of "all the drama, all the arguing between her mother and my son," claiming that "I'm just not a fighter." He further denied substance abuse issues, stating that he would only use marijuana "every once in a while," and blamed a prior possession of methamphetamine charge on his adult son, claiming that the son stole his vehicle, took his license, and posed as the petitioner when law enforcement located methamphetamine in his coat pockets.

Although the circuit court recognized the petitioner's efforts with participation in services, it did not find that reunification or visitation would be in the child's best interests. Specifically, the court found that "all the efforts were made to encourage [the child] to agree to visitations . . . [however,] the child has not overcome her fears despite counseling . . . whatever went on in the household has so traumatized her that she cannot face her father." The court recognized that the child's wishes were "not dispositive, but certainly . . . something the court must consider." Noting that the child had not had contact with the petitioner since April 2020, the court found that there was no bond between the two. The court further found that there was "no reasonable likelihood that the breakdown of their relationship can be substantially corrected in the near future," considering the testimony that the petitioner had "not demonstrated the ability to appropriately parent" as well as the petitioner's failure to "take responsibility of how this has impacted [the child]." Therefore, finding it necessary for the welfare of the child, the court terminated the petitioner's parental rights and denied post-termination visitation. It is from this dispositional order that the petitioner now appeals.[4]

On appeal from a final order in an abuse and neglect proceeding, this Court reviews the circuit court's findings of fact for clear error and its conclusions of law de novo. Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). The petitioner first argues that the circuit court erred by terminating his parental rights, asserting that the court did not specifically find "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" in accordance with West Virginia Code § 49-4-604(c)(6). However, the petitioner ignores that we have upheld terminations where "[t]he dispositional order entered by the circuit court . . . does not track the language of West Virginia Code [§ 49-4-604]" when the Court was convinced, after reading the dispositional hearing transcript, that "the trial court first reached the conclusions required by [West Virginia Code § 49-4-604(c)(6)] before terminating" those rights. *In re Jamie Nicole H.*, 205 W. Va. 176, 184, 517 S.E.2d 41, 49 (1999). Although the court's order stated that there was "no reasonable likelihood that the breakdown of their relationship can be substantially corrected in the near future," which does not exactly mirror the language of the statute, upon our review of the record, it is clear the court's findings were consistent with the conclusions required by West Virginia Code §49-4-604(c)(6). The court specifically found that, despite participating in services, the petitioner had not demonstrated the ability to appropriately

---

[4] The mother's parental rights were also terminated, and this Court affirmed the circuit court's order on appeal. *See In re H.B.*, No. 21-0135, 2021 WL 2557322, at *4 (W. Va. June 22, 2021) (memorandum decision). The permanency plan for the child is adoption by her foster placement.

parent. This finding was based on the CPS worker's testimony that the petitioner was unable to "absorb the information" and the petitioner's inability to articulate the child's needs. Furthermore, despite previously admitting to domestic violence and substance abuse, the petitioner's denial of any wrongdoing at disposition supports the court's finding that the petitioner failed to take any responsibility. As we have stated, "[i]n order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem . . . results in making the problem untreatable." *In re Timber M.*, 231 W. Va. 44, 55, 743 S.E.2d 352, 363 (2013) (quoting *In re Charity H.*, 215 W. Va. 208, 217, 599 S.E.2d 631, 640 (2004)). Therefore, the record reflects that there was no reasonable likelihood that the conditions of neglect or abuse could be substantially corrected in the near future, and we determine that the court's order is sufficient in this regard.

In asserting further error with the circuit court's decision to terminate his parental rights, the petitioner argues that he did, in fact, correct the conditions which led to the abuse and neglect, pointing to his compliance with the terms of his improvement period. Indeed, the court recognized the petitioner's efforts; however, as we have previously held, "[i]n making the final disposition in a child abuse and neglect proceeding, the level of a parent's compliance with the terms and conditions of an improvement period is just one factor to be considered. The controlling standard that governs any dispositional decision remains the best interests of the child." Syl. Pt. 4, *In re B.H.*, 233 W. Va. 57, 754 S.E.2d 743 (2014). Here, the court's dispositional order largely turned on the child's best interests. The court found that the child could not overcome her trauma despite the DHS's reasonable efforts, including therapy and correspondence from the petitioner. We refuse to disturb these findings on appeal, as the court properly weighed the evidence presented. *See State v. Guthrie*, 194 W. Va. 657, 669 n.9, 461 S.E.2d 163, 175 n.9 (1995) ("An appellate court may not . . . weigh evidence as that is the exclusive function and task of the trier of fact.").

The petitioner also argues that, rather than terminating his parental rights, the court should have employed a less restrictive alternative; however, the evidence outlined above supports the court's dispositional decision. *See* Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011) (holding that termination is appropriate "without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(c)(6)] that conditions of neglect or abuse can be substantially corrected.") (quoting Syl. Pt. 2, *In re R.J.M.*, 164 W. Va. 496, 266 S.E.2d 114 (1980)); *see also* W. Va. Code § 49-4-604(c)(6) (permitting termination of parental rights upon finding that there is no reasonable likelihood conditions of abuse and neglect can be substantially corrected and when necessary for the child's welfare).

Finally, the petitioner argues that the circuit court erred by denying him post-termination visitation with the child. We have previously held that a circuit court may grant a parent post-termination visitation when "continued visitation or other contact with the abusing parent is in the best interest of the child" and "would not be detrimental to the child's well being" after considering several factors, such as "whether a close emotional bond has been established between parent and child and the child's wishes, if he or she is of appropriate maturity to make such request." Syl. Pt. 11, in part, *In re Daniel D.*, 211 W. Va. 79, 562 S.E.2d 147 (2002) (quoting Syl. Pt. 5, *In re Christina L.*, 194 W. Va. 446, 460 S.E.2d 692 (1995)). Here, the court considered substantial evidence that supported its denial of post-termination visitation. Not only did the child consistently express her wishes not to see the petitioner, but she had not seen him since her removal in April

4

2020. The petitioner asserts that the court erred in finding there was no bond between him and the child when he was denied the opportunity to re-establish one throughout the proceedings, as the court allowed the child to dictate visits when she was less than fourteen years old. In support of this contention, the petitioner cites West Virginia Code § 49-4-604(c)(6)(C), which provides that "the court shall give consideration to the wishes of a child 14 years of age or older or otherwise of an age of discretion as determined by the court *regarding the permanent termination of parental rights*." (Emphasis added). We first point out that the petitioner's reliance on this provision is misplaced as it specifically addresses a child's preference regarding termination at disposition—not a child's preference regarding visitation or contact. In any event, the court acknowledged that the child's wishes were "not dispositive" to its decision but nonetheless found that visitation was not in the child's best interests. The court heard evidence that contact would be detrimental to the child's well-being, including that the petitioner's correspondence caused the child distress and future contact would result in regression. We, therefore, see no error in the court's order, as there was simply no evidence that post-termination visitation would be in the child's best interests.

For the foregoing reasons, we find no error in the decision of the circuit court, and its November 3, 2023, order is hereby affirmed.

Affirmed.

**ISSUED**: November 6, 2024

**CONCURRED IN BY**:

Chief Justice Tim Armstead
Justice Elizabeth D. Walker
Justice John A. Hutchison
Justice William R. Wooton
Justice C. Haley Bunn